**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STRATITUDE, INC., | ) | Case No. 17-30724 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | Hearing Date: October 19, 2017 |
| | ) | Hearing Time: 10:00 a.m. |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on **Thursday, October 19, 2017, at 10:00 a.m.,** we shall appear before the Honorable Jack B. Schmetterer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his place and stead, at Courtroom 682 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION FOR ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364, AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**, a copy of which is hereby served upon you.

> CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
> NATHAN Q. RUGG, ESQ. (ARDC #6272969)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd, Suite 1050
> Chicago, Illinois 60604
> Tel (312) 435-1050
> Fax (312) 435-1059
> **Proposed Counsel for Stratitude, Inc.**

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the documents referred to therein were served upon the parties listed on the below service list via CM/ECF, FedEx Overnight/Worldwide, Facsimile and/or Email as listed herein, on October 13, 2017.

> By: /s/ Nathan Q. Rugg
> Nathan Q. Rugg, Esq.

# SERVICE LIST

## Via ECF

*Office of the United States Trustee*
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov

*Counsel to Official Committee of Unsecured Creditors for Quadrant 4 System Corp*
- Michael A Brandess    mbrandess@sfgh.com, bkdocket@sfgh.com
- Aaron L. Hammer    ahammer@sfgh.com, chorvay@sfgh.com, mbrandess@sfgh.com, joconnor@sfgh.com, mmelickian@sfgh.com, bkdocket@sfgh.com, dmadden@sfgh.com, evandesteeg@sfgh.com

*Counsel to BMO Harris Bank, N.A.*
- Stephanie K. Hor-Chen    schen@vedderprice.com, ecfdocket@vedderprice.com
- Douglas J. Lipke    dlipke@vedderprice.com, ecfdocket@vedderprice.com

## Via FedEx Overnight/Worldwide, Facsimile, and/or Email where indicated

*Counsel to BIP Lender, LLC*
BIP Lender, LLC
c/o Nelson Mullins Riley & Scarborough LLP
ATTN: Peter J. Haley, Managing Partner
One Post Office Square
Boston, MA 02109
Email: Peter.Haley@nelsonmullins.com

*20 Largest Unsecured Creditors*
Accu Source Consulting
ATTN: Chris Jones
T-9,A block, Himagiri Green Forest Apts
 Sliver Oak Street, JP Nagar 7th Phase
Bangalore, 78, INDIA
EMAIL: chrisnovelteam@gmail.com

Agama Solutions
ATTN: David Newby, Attorney
Momkus McCluskey Roberts LLC
1001 Warrenville Road, Suite 500
Lisle, IL 60532
FAX: (630) 434-0444
EMAIL: dnewby@momlaw.com

*20 Largest Unsecured Creditors (cont'd)*
Agile Health Technologies Inc
ATTN: Sasi Gandhamaneni
2728 Forgue Dr., Ste 106
Naperville,IL  60564
EMAIL: sasi@agilehealthtech.com

Benajy Corporation
825 Creekside Place,
Santa Clara,CA  95051

California Creative Solutions Inc
ATTN: Raj Bartwal
13475 Danielson St,  #220,
Poway,CA  92064
FAX: 858-683-2424
EMAIL: rbartwal@ccsglobaltech.com

CITY OF FREMONT
39550 Liberty Street, P.O. Box 5006
Fremont, CA 94537-5006
FAX: (510) 494-4754
EMAIL: businesslicense@fremont.gov

Clear Technologies, LLC
4475 South Clinton Ave,
South Plainfield,NJ  07080
EMAIL: info@cleartechnologies.com

Cloud Big Data Technologies LLC
ATTN: Aparna Vishwanathan
12200 Ford Road, Suite A405
Dallas,TX  75234
EMAIL: aparna.v@cloudbigd.com

CQUENT SYSTEMS INC.
ATTN: Naveen R. Kancherla
3415 N Kennicott Ave., Suite B
Arlington Heights,,IL  60004
EMAIL:
naveen.kancherla@cquentsystems.com

EYork Consulting Inc
ATTN: Ashok Abhyankar
1025 First ST SE, Suite 1110
Washington,DC  20003
FAX: 516-654-5001
EMAIL: receivables@eyorkinc.com

Hi Q Software Solutions
2727 Walsh Ave, # 207
Santa Clara,CA  95051
FAX: 530-231-0128

Intellyk Inc
ATTN: Vineet Kumar
15 Corporate Place South, Suite 450
Piscataway,NJ  08854
EMAIL: vineet@intellyk.com

Lead IT Corporation
ATTN: Sampath
1999 Wabash Ave, Suite # 210
Springfield,IL  62704
EMAIL: accounts@leaditgroup.com

Medha Consulting Group, LLC
27 Judson Street, Suite # 6B
Edison,NJ  08837
EMAIL: info@medhagroup.com

Mentis Solutions, Inc
ATTN: MENTIS, FINANCE
55 Carter Drive, Suite 212
Edision,NJ  08817
FAX: 732-518-6770
EMAIL: finance@mentissol.com

Red Mesa, LLC
ATTN: Drew Porter
698 56th Street,
Oakland,CA  94609
EMAIL: drew@redmesa.io

Sandy Lanes Ventures, Inc.
ATTN: Tom Tshontikidis
34065 Castlehaven Road,
Agua Dulce,CA  91390
EMAIL: tomtshontikidis@gmail.com

Upstream Global Services Inc
ATTN: M Kiran
19 B, Crosby Drive, Suite 130
Bedford,MA  01730
FAX: (781) 275-7909
EMAIL: kiranm@upstreamgs.com

VARNAR, INC
ATTN: Lakshmi Yenamandra
46090 Lake Center Plaza, Suite 108
Sterling,VA  20165
FAX: (703) 831-3413
EMAIL: lakshmi@varnar.com

Yash Technologies Inc
ATTN: Ravi Kumar Seemarla
455 Avenue of the Cities,
East Moline,IL  61244
FAX: 630-982-0780
EMAIL: ts_yash@yash.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STRATITUDE, INC., | ) | Case No. 17-30724 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | Hearing Date: October 19, 2017 |
| | ) | Hearing Time: 10:00 a.m. |

**MOTION FOR ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364, AND
(III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

NOW COMES STRATITUDE, INC., debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel and, upon its motion (the "Motion"): for the entry of orders pursuant to sections 105, 361, 363, 506 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (1) authorizing the Debtor to use cash collateral; (2) granting adequate protection to BMO Harris Bank, N.A. (the "Lender"); and (3) setting a final hearing on the Motion to consider the entry of a final order. In support of the Motion, the Debtor respectfully states as follows:

**I.      STATEMENT PERTAINING TO BANKRUPTCY RULE 4001 DISCLOSURES**

The Motion seeks authority to allow the Debtor to use cash collateral, and to provide adequate protection to the Debtor's prepetition lenders. For ease of reference, the specific disclosures required for this Motion by Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001 are set forth in section IV below on pages 8-10 because the many of the described

1

#879815v2

terms or parties referred to in those disclosures are defined or explained in the preceding sections II and III.

## II. FACTUAL BACKGROUND

### A. Chapter 11 Case

1. On October 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 case (the "Chapter 11 Case"). Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its businesses as a debtor in possession in accordance with sections 1107(a) and 1108 of the Code.

2. Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Case.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (M) and (O). The statutory predicates for the relief requested herein are sections 105, 361, 363, 506 and 507 of the Bankruptcy Code.

4. The nature of the Debtor's business, the factual background relating to the commencement of the Chapter 11 Case, and further factual support for this Motion, are set forth in more detail in the *Declaration of Robert H. Steele in Support of Chapter 11 Petition and First-Day Motions* (the "Declaration") filed on the Petition Date and incorporated herein by reference.[1]

### B. Financing Prior to the Chapter 11 Case

5. Prior to the commencement of the Chapter 11 Case, the Lender loaned money to or for the benefit of the Debtor's owner and parent corporation, Quadrant 4 System Corporation

---

[1] Any capitalized terms not otherwise defined in the Motion shall have the same meaning as ascribed in the Declaration.

2

#879815v2

("Quadrant 4"),[2] pursuant to the terms and conditions of (a) that certain Credit Agreement, dated as of July 1, 2016 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement") by and between Quadrant 4 and the Lender; (b) that certain First Amendment to Credit Agreement, dated as of November 3, 2016 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement Amendment") by and among Quadrant 4, the Debtor and the Lender; (c) that certain General Security Agreement, dated as of July 1, 2016 (as amended, supplemented or otherwise modified from time to time, the "Borrower Security Agreement") by and between Quadrant 4 and the Lender; (d) that certain Amendment No. 1 to General Security Agreement, dated as of November 3, 2016 (as amended, supplemented or otherwise modified from time to time, the "Security Agreement Amendment") by and among the Debtor, Quadrant 4 and the Lender; (e) that certain General Security Agreement, dated as of November 3, 2016 (as amended, supplemented or otherwise modified from time to time, the "Guarantor Security Agreement") by and between the Debtor and the Lender; (f) that certain Revolving Note, dated as of July 1, 2016 (as amended, supplemented or otherwise modified from time to time, the "Revolving Note") by Quadrant 4 in favor of the Lender in the original principal amount of $7,000,000.00; (g) that certain Term Note, dated as of July 1, 2016 (as amended, supplemented or otherwise modified from time to time, the "Term Note") by Quadrant 4 in favor of the Lender in the original principal amount of $13,000,000.00; (h) that certain CapEx Software Note, dated as of July 1, 2016 (as amended, supplemented or otherwise modified from time to time, the "CapEx Note," and collectively with the Revolving Note and Term Note, the "Notes") by Quadrant 4 in favor of the Lender in the original principal amount of $5,000,000.00; (i) that certain Guaranty Agreement (as amended, supplemented or otherwise

---

[2] On June 29, 2017, Quadrant 4 filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code, commencing the case captioned as *In re Quadrant 4 System Corporation*, Case No. 17-19689 (the "Quadrant 4 Bankruptcy Case").

3

#879815v2

modified from time to time, the "Guaranty") by the Debtor in favor of the Lender; (j) that certain Forbearance Agreement effective as of March 17, 2017, by and among Quadrant 4, the Debtor and the Lender, and (k) as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents in connection therewith and with the prepetition financing arrangements from the Lender to Quadrant 4 (in each case, as amended, restated, supplemented or otherwise modified from time to time, and collectively with the Credit Agreement, the Credit Agreement Amendment, the Borrower Security Agreement, the Security Agreement Amendment, the Guarantor Security Agreement, the Notes and the Guaranty, the "Pre-Petition Agreements")).

6. The Debtor is indebted to the Lender in respect of all "Obligations" under the Pre-Petition Agreements, which as of the Petition, were in the aggregate outstanding principal amount of approximately $8,481,271.41, along with interest, fees and charges accrued and accruing thereon and chargeable with respect thereto (collectively, the "Pre-Petition Loan Indebtedness")

7. As of the Petition Date, the Pre-Petition Loan Indebtedness is secured pursuant to the Pre-Petition Agreements by perfected, valid, binding and non-avoidable first priority liens and security interests granted by the Debtor to or for the benefit of the Lender upon all of the "Collateral" (as defined in the Pre-Petition Agreements)[3] existing as of the time immediately

---

[3] The Guarantor Security Agreement defined Collateral to include, without limitation, the following assets of the Debtor: all Accounts (including Health-Care Insurance Receivables, if any); Chattel Paper (whether tangible or electronic); Instruments (including Promissory Notes), Documents, General Intangibles (including without limitation, all Payment Intangibles and Software, patents, trademarks, trade styles, copyrights and all other intellectual property rights, including all applications, registration and licenses therefor, and all goodwill of the business connected therewith or represented thereby); Letter-of-Credit Rights; Supporting Obligations; Deposit Accounts; Investment Property (including without limitation, certificated and uncertificated Securities, Securities Accounts, Security Entitlements, Commodity Accounts, and Commodity Contracts); Inventory; Equipment (including without limitation, all software, whether or not the same constitutes embedded software, used in the operation thereof); Fixtures; Commercial Tort Claims; rights to merchandise and other Goods (including rights to returned or repossessed Goods and rights of stoppage in transit) which are represented by, arise from or relate to any

4

#879815v2

prior to the Petition Date, and the postpetition proceeds and products thereof (collectively, together with any other property of, among other things, each Debtor's estate in which a lien or security interest has been granted to or for the benefit of the Lender immediately prior to the Petition Date, the "**Pre-Petition Collateral**").

8. Prior to the Petition Date, and as part of that certain Forbearance Agreement by and among the Debtor, the Lender and the Guarantor dated March 17, 2017, the Debtor admitted that the Pre-Petition Agreements and Pre-Petition Loan Indebtedness are valid and enforceable and has waived, and is unaware of, any defenses, set-offs, or counterclaims to the claims of the Lender with respect thereto.

9. On November 3, 2016, the Quadrant 4 entered into that certain $5,075,000 Senior Subordinated Credit Agreement and related loan documents with BIP Quadrant 4 System Debt Fund I, LLC, as lender and BIP Lender, LLC, as collateral agent (collectively, the "BIP Lender" or the "BIP Lender Loan"). In connection therewith, the Debtor entered into that certain General Security Agreement with BIP Lender, and the Lender, the BIP Lender, the Debtor and Quadrant 4 entered into that certain Intercreditor and Subordination Agreement dated November 3, 2016 (the "Intercreditor Agreement").

10. Pursuant to the Intercreditor Agreement, among other things, (i) the Lender's security interests in, and liens upon, the Pre-Petition Collateral are senior and prior in right to the security interests and liens of the BIP Lender, if any, in and upon the Pre-Petition Collateral, and (ii) the payment of any "Second Lien Obligations" (as defined in the Intercreditor Agreement) are subordinate and subject in right and time of payment to all "First Lien Obligations" (other than "Excluded First Lien Obligations") (both terms as defined in the Intercreditor Agreement).

---

of the foregoing; monies, personal property, and interests in personal property of the Debtor of any kind or description held by the Lender; accessions and additions to, and substitutions and replacements of, any and all of the foregoing; proceeds and products of the foregoing.

11. Pursuant to that certain Subordination Agreement dated November 3, 2016, by and among the Quadrant 4, the Lender, and the "Subordinated Creditor" (as defined therein), (i) the Lender's security interests in, and liens upon, the Pre-Petition Collateral are senior and prior in right to the security interests and liens of the Subordinated Creditor, if any, in and upon the Pre-Petition Collateral, and (ii) the payment of the "Subordinated Obligations" (as defined in the "Subordination Agreement") are subordinate and subject in right and time of payment of the "Senior Indebtedness" (as defined in the Subordination Agreement).

    C.    **Need for Use of Cash Collateral**

12. The Debtor requires immediate use of cash collateral (as defined by section 363 of the Bankruptcy Code, "Cash Collateral") pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 4001. In the absence of this immediate access, the Debtor will be unable to continue operating its business, causing immediate and irreparable loss or damage the Debtor's estate, to the detriment of the Debtor, its creditors and other parties in interest. The Debtor does not have sufficient unrestricted cash and other financing available to operate its business, maintain the estate's properties, and administer the Chapter 11 Case absent the relief provided in this Motion.

### III.    RELIEF REQUESTED

    A.    **Interim Use of Cash Collateral**

11. By this Motion, the Debtor requests the entry of an interim order substantially in the form of Exhibit A attached hereto, (the "**Interim Order**"), approving the use of Cash Collateral consistent with the terms of Pre-Petition Agreements as expressly modified by the Interim Order, and to allow the Debtor to use cash collateral pursuant to the budget attached hereto as Exhibit B (the "**Initial Budget**"), from the date of the Interim Order through the date

6

#879815v2

of the entry of a "Final Order" (as hereafter defined), as more fully set forth in the Interim Order (the "**Interim Period**").

### B. Use of Cash Collateral Beyond the Interim Period

12. The Debtor further requests the entry of a final order (the "**Final Order**") in form and substance acceptable to the Debtor and the Lender, authorizing continued use of cash collateral through at least December 31, 2017, to be considered at a final hearing to be scheduled by the Court.

### C. Budget for Cash Collateral Use

13. The Initial Budget sets forth all projected cash receipts, sales and cash disbursements (by line item) on a weekly basis for the time period from the Petition Date through and including the date this Court enters the Final Order. The Initial Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Lender and the Debtor agree in their respective discretion (the "**Subsequent Approved Budgets**").

### D. Negotiations in Good Faith

14. During the weeks leading up to the Petition Date, the Lender and the Debtor conducted lengthy, good faith negotiations with respect to the terms and conditions of the Interim Order and the Initial Budget.

### E. Final Hearing

15. The Debtor further requests that the Court set a final hearing on the Motion pursuant to Rule 4001(b)(2) of the Bankruptcy Rules, to consider the entry of the Final Order.

## IV. FED. R. BANKR. PROC. 4001(b)(1)(B) AND L.R. 4001-2 DISCLOSURES[4]

16. The following disclosures are made pursuant to Bankruptcy Rule 4001(b)(1)(B) with respect to the terms of the Use of Cash Collateral and/or the impact of the relief sought by this Motion:

a. <u>Termination of Use; Payment of Proceeds</u>. The Lender may terminate the use of Cash Collateral as a result of certain enumerated events of default stated in the Interim Order. **Interim Order, ¶¶14, 15.** The Lender shall be repaid through proceeds and payments received by the Lender as applied in the priority set forth in the Interim Order. **Interim Order, ¶8**.

b. <u>Grant of Priority or Liens under §363 for Use of Cash Collateral</u>. The Interim Order provides that upon entry of the Final Order, the Lender will receive post-petition priming liens and security interests (the "**Liens**") on substantially all of the assets and properties of the Debtor, but **not** including avoidance actions arising under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**") to secure the Post-Petition Indebtedness (collectively, the "**Collateral**"). **Interim Order, ¶¶3, 5.** The Liens are subject to the "Carve-Out" (hereafter defined), and the Prior Permitted Liens. **Interim Order, ¶¶3, 7.** The Interim Order provides that to the extent adequate protection of the interests of the Lender in the Collateral proves insufficient, the Lender shall be granted an administrative expense claim under section 507(b) of the Bankruptcy Code (the "<u>Superpriority Claims</u>"), and shall be subordinate to the carve-out for fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), fees payable to the Clerk of the Bankruptcy Court, professional fees, and budgeted expenses as further provided in paragraph 7 of the Interim Order (the "**Carve-Out**"). **Interim Order, ¶¶3, 7**.

c. <u>Adequate Protection for Priority for Prior Permitted Liens</u>. The Liens are subject and junior to any Prior Permitted Liens. **Interim Order, ¶3.** BIP Lender has expressly consented, and the Subordinated Creditor, is deemed to have consented to entry the terms of the Interim Order, pursuant to (respectively) the Intercreditor Agreement and the Subordination Agreement.

d. <u>Validity of Pre-Petition Loan Indebtedness and Pre-Petition Collateral</u>. The Debtor stipulates to the validity of the Pre-Petition Loan Indebtedness and to the validity and first priority of the liens in the Pre-Petition Collateral to secure such debt. **Interim Order, ¶23.**

e. <u>Automatic Stay Modification</u>. The Interim Order provides for the modification of the automatic stay upon the Termination Date. **Interim Order, ¶¶13, 15.**

---

[4] References herein to the terms for the use of Cash Collateral or the Interim Order are merely a summary, and to the extent of any conflict between the summaries contained herein and the Interim Order, the Interim Order shall control.

8

#879815v2

 f. <u>No Other Certain Waivers</u>.  The Motion does not seek relief to waive the Debtor's exclusive period to file a plan, or the right to request other use of cash collateral or new credit, except however, the pursuit of the latter may constitute a default under the Interim Order and the new financing must first be used to pay down the Pre-Petition Loan Indebtedness. **Interim Order, ¶8.**

 g. <u>No Plan of Reorganization Deadlines</u>.  The Motion does not seek relief to establish deadlines for filing a plan or disclosure statement.

 h. <u>Certain Waivers in Interim Order</u>.  The Interim Order waives certain perfection requirements that may exist under applicable non-bankruptcy law pertaining to the priority, perfection and/or validity of the Liens and the Replacement Liens. **Interim Order, ¶5.**

 i. <u>Deadlines to Challenge Existing Indebtedness or Liens</u>. The ability to challenge the validity, perfection and amount of the liens or claims of Lender or to otherwise assert any claims against such parties shall be forever discharged and released if such challenge is not initiated by a creditors' committee within 60 days of formation of such committee, or by any party-in-interest within 75 days from entry of the Interim Order. **Interim Order, ¶23**.

 j. <u>Indemnification of Lender</u>.  The Pre-Petition Agreements contain various indemnification provisions (e.g. section 9.10 of the Credit Agreement).  The Interim Order, however, does not adopt such provisions and contains no new indemnification terms.

 k. <u>§506(c) Waiver</u> .  The Interim Order provides that upon entry of the Final Order, and except for the Carve-Out, the estate shall waive any rights under 11 U.S.C. § 506(c) with respect to the Pre-Petition Indebtedness, the Post-Petition Indebtedness, or the Collateral.  **Interim Order, ¶7.**

 l. <u>Liens on Avoidance Actions</u> . The Interim Order does not grant the Lender liens on Avoidance Actions.

17. To the extent not otherwise already disclosed herein, the following are additional disclosures required by Local Bankruptcy Rule 4001-2(A)(2) of certain terms contained in the Interim Order or the DIP Credit Agreement:

 a. <u>Cross-Collateralization other than replacement lien or other adequate protection</u>. N/A.

 b. <u>Roll-Up</u>.  Application of cash proceeds or payments received by the Lender with respect to the Collateral is conditioned upon entry of the Final Order.  Subject thereto, such proceeds will be used to pay, in order: (i) the Lender's reasonable costs, fees and

9

#879815v2

attorneys' fees; (ii) accrued interest for the Post-Petition Indebtedness; (iii) principal of the Post-Petition Indebtedness; and (iv) payment of interest and principal of the Pre-Petition Loan Indebtedness. The Interim Order does not deem the Pre-Petition Loan Indebtedness to be post-petition debt. **Interim Order, ¶8.**

c.  Carve-Out and Wind-Down Expense Limitations. The Interim Order does not provide for different treatment of professionals relative to one another or limit a committee counsel's use of a professional fee carve-out, except that no portion of the Loans, the Collateral, Cash Collateral, or the Carve-Out, may be used to contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Loan Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition Loan Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Lender. **Interim Order, ¶7**.

d.  Non-consensual priming liens. The Interim Order does not prime any secured lien without the consent of that lienor. **Interim Order, ¶3, 5**.

e.  No Lender Liability Declaration. The Interim Order does not contain a declaration that it does not impose lender liability on any secured creditor, including the Lender.

f.  Joint and Several Liability of Multiple Debtors. The Interim Order does not provide for joint and several liability other than as already established under the Pre-Petition Agreements among, the Debtor, the Lender, BIP, and/or Quadrant 4.

g.  Release. The Interim Order provides that, conditioned upon entry of a Final Order and subject to the contest period under ¶23, the Debtor and its estates releases the Lender from all claims and actions relating to the Debtor, the Pre-Petition Loan Indebtedness, the Collateral, the Pre-Petition Agreements, or the Post-Petition Indebtedness. **Interim Order, ¶22**.

## V. APPLICABLE AUTHORITY AND JUSTIFICATION FOR RELIEF REQUESTED

19.   Rule 4001(b)(2) of the Bankruptcy Rules governs the procedures for obtaining

authorization to use cash collateral and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

10

Fed. R. Bankr. P. 4001(b). Accordingly, the Court is authorized to grant the relief requested herein.

20. The terms and provisions of the use of Cash Collateral have been negotiated at arms' length and in good faith. In addition, the terms and provisions of the use of Cash Collateral are fair and reasonable under the circumstances.

21. As is described in the Declaration, the Debtor negotiated the use of Cash Collateral pursuant to its business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. *See In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013) (analyzing a debtor's request to repay obligations pursuant to section 363(b) and stating "that such transactions should be approved when they are supported by sound business reasons."); *see also, e.g., In re UAL Corp.*, No. 02-B-48191, 2002 WL 34344253 (Bankr. N.D. Ill. Dec. 11, 2002); *cf. In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (citing the Seventh Circuit Court of Appeals and observing that the debtor must provide an "articulated business justification" when seeking authority to use or sell property of the estate pursuant to section 363(b)) (internal citation omitted).

22. As is described in the Declaration, the use of Cash Collateral ensures that the Debtor has sufficient liquidity to, among other things, to (a) maintain the continuity of its operations, and (b) maximize the value of its businesses and properties. Use of cash collateral is the sole means of preserving and enhancing the Debtor, its business and its assets as a going concern.

23. Accordingly, the Debtor believes that the approval of the use of Cash Collateral is in the best interests of its estate, its creditors and all parties-in-interest, and that the Court should

therefore approve the Interim Order and schedule a final hearing to consider the entry of the Final Order.  Moreover, for the reasons hereinabove stated, the Lender should be accorded the benefits inuring under sections 361 and 363 of the Bankruptcy Code.

### C.  NOTICE OF THE MOTION

24. Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the Debtor's 20 largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007(d); (c) respective counsel to the Debtor's secured lenders, BMO Harris Bank, N.A. and BIP Lender, LLC, as collateral agent; and (d) all other parties who have requested notice and service of pleadings via the Court's CM/ECF system in any of the Chapter 11 Case.  In light of the nature of the limited, critical relief requested, the Debtor submits that no other or further notice is required.

#879815v2

**WHEREFORE**, the Debtor respectfully requests that the Court authorize the use of Cash Collateral on an interim basis, enter the Interim Order attached hereto, set a final hearing to consider the entry of the Final Order, and grant such other and further relief as is just and proper, consistent with the terms hereof.

        Respectfully Submitted,

        Stratitude, Inc.

        By: /s/ Nathan Q. Rugg
            One of its proposed attorneys

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Stratitude, Inc.**